**BENEFIT PLAN 1C.02**
**Kodak Employee Stock Ownership Plan**
**Effective Date:  January 1, 2007**
**As Amended:  November 24, 2010**
**No. of Pages:  58 plus**
**Appendix I and II**

# Kodak Employee Stock Ownership Plan

**Article**                                                                **Page**

1.   INTRODUCTION................................................................................1

2.   DEFINITIONS ...................................................................................2

3.   PLAN ADMINISTRATION ................................................................11

4.   PARTICIPATION ..............................................................................26

5.   CONTRIBUTIONS ............................................................................27

6.   INVESTMENT OF TRUST ASSETS.................................................29

7.   EXEMPT LOANS .............................................................................29

8.   ALLOCATIONS TO PARTICIPANTS' ACCOUNTS ..........................32

9.   DIVERSIFICATION AND DIVIDEND DISTRIBUTIONS....................36

10.  PLAN DISTRIBUTIONS ...................................................................39

11.  TENDERS AND VOTING..................................................................44

12.  TRUST AND TRUSTEE....................................................................48

13.  AMENDMENT AND TERMINATION..................................................50

14.  AFFILIATED COMPANIES AND SUBSIDIARIES..............................52

15.  GENERAL PROVISIONS..................................................................52

16.  TOP-HEAVY PROVISIONS ..............................................................57

**APPENDIX I**

**APPENDIX II**

## 1.     INTRODUCTION

### 1.01   Name

The name of the Plan is the Kodak Employee Stock Ownership Plan.

### 1.02   Purpose

The purpose of the Kodak Employee Stock Ownership Plan is to enable eligible Employees of Eastman Kodak Company and certain Affiliated Companies to share in the future of the Company, to provide Employees with an opportunity to accumulate capital for their future economic security, and to enable Employees to acquire stock ownership interests in Eastman Kodak Company.  Consequently, Company contributions to the Plan will be invested primarily in Employer Securities.  The Plan is also designed to provide a method of corporate finance to the Company.  Accordingly, it may be used to accomplish the following objectives:

a)     To meet general financing requirements of the Company, including capital growth and transfers in the ownership of Employer Securities;

b)     To provide Employees with beneficial ownership of Employer Securities, substantially in proportion to their relative Compensation; and

c)     To receive loans (or other extensions of credit) to finance the acquisition of Employer Securities, with such loans (or credit) secured primarily by a commitment by the Company to pay (subject to the limitations in Section 8.04) Company contributions to the Trust in amounts sufficient to enable principal and interest on such loans to be repaid.

### 1.03   Effective Date

The effective date of the Plan is January 1, 1976.

### 1.04   Qualification

The Plan is a stock bonus plan intended to be qualified under section 401(a) of the Code and, as amended and restated effective as of January 1, 1989, shall constitute an employee stock ownership plan under section 4975(e)(7) of the Code and section 407(d)(6) of ERISA.

## 2.   DEFINITIONS

### 2.01   Adjusted Balance

"Adjusted Balance" means the balance in a Participant's Account, as adjusted in accordance with Sections 8.06 and 8.07 of the Plan as of the applicable Valuation Date.

### 2.02   Affiliated Company

"Affiliated Company" means:

   a)   any corporation which is a member of a controlled group of corporations (as defined in section 414(b) of the Code) which includes the Company;

   b)   any trade or business (whether or not incorporated) which is under common control (as defined in section 414(c) of the Code) with the Company;

   c)   any organization which is a member of an affiliated service group (as defined in section 414(m) of the Code) which includes the Company; and

   d)   any organization or arrangement required to be aggregated with the Company pursuant to regulations under section 414(o) of the Code.

### 2.03   Annual Additions

"Annual Additions" means the total of amounts allocated to a Participant's Account under this Plan and any related plan during any Limitation Year which are:

   a)   Company contributions;

   b)   Employee contributions; or

   c)   forfeitures;

including amounts allocated to an individual medical account, as defined in Code section 415(l)(1) which is part of a defined benefit plan and amounts derived from contributions paid or accrued attributable to post-retirement medical benefits allocated to the separate account of a "key employee" under a welfare benefit fund (as defined in Code section 419(e)), but excluding a transfer of funds from one qualified plan to another or a rollover contribution (as defined in Code sections 402(a)(5), 403(a)(4) and 408(d)(3)).

## 2.04   Beneficiary

"Beneficiary" means the person, trust, or estate entitled to receive benefits payable in the event of a Participant's death.

## 2.05   Board

"Board" will mean the Board of Directors of Eastman Kodak Company, or the person or persons (including a committee) to whom such Board, or someone acting on behalf of such Board with the requisite authority, has delegated authority to act with respect to the Plan.

## 2.06   Code

"Code" means the Internal Revenue Code of 1986, as amended from time to time.

## 2.07   Company

"Company" means Eastman Kodak Company and such of its subsidiaries and Affiliated Companies as may be included in this Plan pursuant to Article XIV hereof, except where reference is made to a particular corporation.

## 2.08   Company Contribution Account

"Company Contribution Account" means the Employer Securities and other assets held by the Trustee for the Plan derived from Company contributions to the Trust which have not been allocated to Participants' Accounts.

## 2.09   Compensation

"Compensation" means the lesser of:

    a)    the arithmetic sum of:

        1)    a Participant's total earnings from the Company as reportable on Form W-2 or a similar substitute form for a Plan Year,

        2)    plus any elective deferrals in lieu of cash under a Code section 401(k) CODA arrangement,

3)      plus any elective deferrals in lieu of cash under a Code section 125 "cafeteria plan" arrangement or a Code section 132(f)(4) arrangement,

4)      less any "moving expense" reimbursement, whether taxable or non-taxable, for which an employer is required to furnish an employee with a statement of such amounts on Form 4782, or equivalent,

5)      less any Form W-2 earnings included in Section 2.10(a)(1), above, that are attributable to the exercise of any stock option, stock appreciation right ("SAR"), phantom stock or similar compensation device granted primarily to highly compensated employees (within the meaning of section 414(q) of the Code) by the Company,

6)      less any payment under the Long Term Performance Award Plan or any similar incentive plan maintained primarily for highly compensated employees (within the meaning of section 414(q) of the Code),

7)      less suggestion awards,

8)      less tuition reimbursements to the extent they are included in Section 2.10(a)(1), and

9)      less anything included in Form W-2 earnings as a result of expatriate status; or

b)      the limit established under Code section 401(a)(17), as adjusted for the Plan Year by the Secretary of the Treasury.  The annual Compensation of each Participant taken into account in determining allocations for any Plan Year beginning after December 31, 2001, shall not exceed $200,000, as adjusted for cost-of-living increases in accordance with section 401(a)(17)(B) of the Code. Annual Compensation means Compensation during the plan year or such other consecutive 12-month period over which Compensation is otherwise determined under the Plan (the "determination period"). The cost-of-living adjustment in effect for a calendar year applies to annual Compensation for the determination period that begins with or within such calendar year.

## 2.10   Convertible Preferred Stock

"Convertible Preferred Stock" means shares of preferred stock issued by Eastman Kodak Company which by their terms are convertible into Kodak Stock.

## 2.11   Debt

"Debt" means any borrowing obligation incurred by the Trustee that is not a Loan.

## 2.12   Determination Date

"Determination Date" means the last day of the preceding Plan Year.

## 2.13   Distribution Date

"Distribution Date" is the date upon which a distribution of benefits is made under Article 10.

## 2.14   Employee

"Employee" means any person employed and compensated for services in the form of an hourly wage or salary by the Company, except for (a) nonresident aliens working outside of the United States, (b) "Limited Service Employees," or (c) "Kodak Ambassadors."  Employee shall also include any person who is absent from work for reasons approved by SOPCO under uniform rules applied in a non-discriminatory manner.  Furthermore, Employee shall include a U.S. citizen employed by a foreign subsidiary of the Company and a U.S. citizen employed abroad by a qualified domestic subsidiary corporation of the Company provided that all of the following conditions are met:

   a)   The U.S. citizen is not a participant in any other funded pension, profit sharing, stock bonus or other plan of deferred compensation sponsored by another person or corporation with respect to the compensation he receives from his employer;

   b)   The U.S. citizen is transferred from the Company to the foreign subsidiary or the qualified domestic subsidiary, as the case may be, and if employed by the Company would meet all the requirements for participation in the Plan; and

c)    In the case of a U.S. citizen who works for a foreign subsidiary corporation, the Company has entered into an agreement with the Commissioner of Internal Revenue under section 3121(l) of the Code which covers the U.S. citizens employed by the foreign subsidiary corporation under the Federal Social Security Act.

The term "Employee" does not include, among others, (1) a person who is considered by the Company to be a "Leased Employee" or "independent contractor," for the entire period of time such person is so considered, and such person shall not be considered an Employee during such period even if a subsequent determination is made that he is or has been a common law employee of the Company, or (2) a person considered by the Company, or deemed by any court or governmental agency, to be a "special employee," as defined under the common law of New York State, or to have similar status under the laws of any other State.

## 2.15   Employer Securities

"Employer Securities" means any "qualifying employer securities" of Eastman Kodak Company within the meaning of section 409(l) of the Code, including Convertible Preferred Stock and Kodak Stock.

## 2.16   ERISA

"ERISA" means the Employee Retirement Income Security Act of 1974, as amended from time to time.

## 2.17   Hour of Service

"Hour of Service" means:

a)    Each hour for which an Employee is either directly or indirectly paid or entitled to payment by the Company for the performance of duties during the applicable computation period.  Pursuant to section 2530.200b-2(c) of the Department of Labor Regulations, which are incorporated herein by this reference, these hours shall be credited to the Employee for the computation period in which the duties were performed, and

b)    Each hour for which an Employee is paid or entitled to payment by the Company on account of a period of time during which no duties are performed (irrespective of whether the employment relationship has terminated) due to vacation, holiday, illness, incapacity (including

disability), layoff, jury duty, military duty, leave of absence, or other absence for reasons approved by SOPCO under uniform rules applied in a nondiscriminatory manner.  Hours under this paragraph shall be calculated and credited pursuant to section 2530.200b-2(b) of the Department of Labor Regulations which are incorporated herein by this reference, and

c)      Each hour for which back pay, irrespective of mitigation of damages, is either awarded or agreed to by the Company.  The same Hours of Service shall not be credited both under paragraph (a) or paragraph (b), as the case may be, and under this paragraph (c).  Pursuant to section 2530.200b-2(c) of the Department of Labor Regulations which are incorporated herein by this reference, these hours shall be credited to the Employee for the computation period or periods to which the award or agreement pertains rather than the computation period in which the award, agreement or payment is made.

Hours of Service for performance of duties will be determined from the employment records of the Company or pursuant to any alternative for non-hourly employees allowed by applicable rules or regulations.

## 2.18   KESOP Account

"KESOP Account" means the separate record maintained for each Participant to reflect, in units, all allocations with respect to contributions made for Plan Years beginning on or after January 1, 1989, and to reflect distributions thereof.

## 2.19   Kodak Ambassador

"Kodak Ambassador" means a person who is hired by the Employer for the specified purpose of meeting short-term needs of 900 hours or less in any consecutive 12-month period and who is designated as a Kodak Ambassador when hired.

## 2.20   Kodak Convertible Preferred Stock Account

"Kodak Convertible Preferred Stock Account" means the account of that name maintained pursuant to Section 8.02.

## 2.21   Kodak Stock

"Kodak Stock" means the authorized voting common shares of Eastman Kodak Company.

### 2.22  Kodak Stock Account

"Kodak Stock Account" means the account of that name established and maintained pursuant to Section 8.02.

### 2.23  KTRASOP Account

"KTRASOP Account" means the separate record maintained for each Participant to reflect, in units, all allocations with respect to contributions made for Plan Years beginning before 1989, and to reflect distributions thereof.

### 2.24  Leased Employee

"Leased Employee" means any individual who has performed services for the recipient, but only if:

a)      such services are provided pursuant to an agreement between the recipient and any other person;

b)      such individual has performed such services for the recipient (or for the recipient and related persons) on a substantially full-time basis for a period of at least 1 year; and

c)      such services are performed under the recipient's primary direction or control.

For purposes of this definition, the term "recipient" means the Company or an Affiliated Company, and then the term "related persons" has the meaning provided in Code section 414(n)(6)(A).

### 2.25  Limitation Account

"Limitation Account" means a suspense account established to hold amounts which, if allocated to a Participant's Account for a Limitation Year, would cause the Annual Additions for the particular Participant to exceed the limitations of Code section 415.

### 2.26  Limitation Year

"Limitation Year" means the 12 consecutive month period to be used in determining the Plan's compliance with section 415 of the Code and the regulations thereunder.  The

Company shall take all actions necessary to ensure that the Limitation Year is the same 12-month period as the Plan Year.

## 2.27   Limited Service Employee

"Limited Service Employee" means a person who is hired by the Employer for the specified purpose of meeting short term needs of 900  Hours of Service or less in any consecutive 12 month period and who is designated as a Limited Service Employee when hired.

## 2.28   Loan

"Loan" means any loan as described in section 4975(d)(1) of the Code to the Trustee made or guaranteed by a disqualified person (within the meaning of section 4975(e)(2) of the Code), including, but not limited to, a direct loan of cash, a purchase money transaction, an assumption of an obligation of the Trustee, an unsecured guarantee, or the use of assets of a disqualified person (within the meaning of section 4975(e)(2) of the Code) as collateral for a loan.

## 2.29   Loan Suspense Account

"Loan Suspense Account" means an account to which securities purchased with any Loans are allocated pending their release and allocation to other accounts as the Loan is repaid.

## 2.30   Maximum Permissible Amount

"Maximum Permissible Amount" means the lesser of:

(a)     $40,000, as adjusted for increases in the cost-of-living under section 415(d) of the Code, or

(b)     100 percent of the Participant's compensation, within the meaning of section 415(c)(3) of the Code, for the Limitation Year.

(c)     Notwithstanding the above, the compensation limit referred to in (b) shall not apply to any contribution for medical benefits after separation from service (within the meaning of section 401(h) or section 419A(f)(2) of the Code) which is otherwise treated as an Annual Addition.

## 2.31   Normal Retirement Date

"Normal Retirement Date" means the date a Participant attains age 65.

## 2.32   Participant

"Participant" means an Employee or former Employee of the Company who has an account balance in the Plan.

## 2.33   Participant Account

"Participant Account" means the separate record maintained for each Participant to reflect all allocations and distributions, including the Participant's KTRASOP Account and the Participant's KESOP Account.

## 2.34   Plan

"Plan" means the Kodak Employee Stock Ownership Plan (formerly the Kodak Tax Credit Stock Ownership Plan) as adopted by the Company and as it may subsequently be amended from time to time.

## 2.35   Plan Year

"Plan Year" means a calendar year.

## 2.36   SOPCO

"SOPCO" means the Stock Ownership Plan Committee, or any successor thereto, which consists of the Eastman Kodak Company employees with the following, or successor, titles: Chief Financial Officer; General Counsel; Director, Human Resources; Treasurer; and Director, Worldwide Total Compensation.

## 2.37   Trust

"Trust" means the arrangement established by the Trust Agreement between the Company and a Trustee.

## 2.38   Trust Agreement

"Trust Agreement" means the agreement entered into by and between the Company and the Trustee or successor Trustee designated therein, establishing the Trust and specifying the duties of the Trustee.

## 2.39   Trust Fund

"Trust Fund" means all money, securities and other property held under the Trust Agreement.

## 2.40   Trustee

"Trustee" means the trustee or trustees, whether corporate or individual, at any time appointed and acting hereunder with respect to the assets held by such trustee.

## 2.41   Valuation Date

"Valuation Date" means each day the New York Stock Exchange is open for trading, or such other date as shall be determined by SOPCO.

## 3.   PLAN ADMINISTRATION

## 3.01   Appointment of SOPCO

SOPCO will control and manage the operation and administration of the Plan and Trust as and to the extent set forth in the Plan and Trust.  The members of SOPCO may be Employees.  Employees shall not, however, be entitled to compensation from the Trust for their services as members of SOPCO.  The persons named to SOPCO shall acknowledge in writing that they are fiduciaries under the Plan.  Any member may resign by delivering his written resignation to the Chairperson of SOPCO, which may act notwithstanding any vacancies.

## 3.02   Named Fiduciary and Plan Administrator

SOPCO shall be the "named fiduciary" and "plan administrator" as those terms are used in ERISA.  SOPCO shall be the agent for the service of legal process with respect to the Plan.

### 3.03   Powers and Duties of SOPCO

a)   **Definitions.**  For purposes of this Section and Sections 3.05-3.07, the following definitions will apply:

1)   "Action" means a dispute resolution process of any kind, other than the claims and appeals process described in Section 3.05, including, without limitation, judicial or administrative proceedings, arbitration or mediation;

2)   "Agreement" means any contract or agreement of any kind, including, without limitation, administrative services agreements, trust agreements, investment-related agreements, releases, waivers and employment agreements;

3)   "Appeal Letter" means the written decision by SOPCO with respect to the review described in Section 3.05(d) of a Claim denial;

4)   "Claim" means a Routine Claim for Payment of Benefits or an Other Claim;

5)   "Claimant" means a person who files a Claim;

6)   "Court" means the person or persons with the authority to resolve the dispute underlying an Action, including, without limitation, a judge or arbitrator;

7)   "Damages" means benefits under the Plan and any remedy of any kind, whether legal, equitable or otherwise, arising under any Law, including, without limitation, restitution, attorneys' fees, penalties, and any loss, interest, liability, claim, damage, charge, cost or expense;

8)   "Law" means any statute, law, ordinance, rule, regulation, code, order, judgment, injunction, decree, judicial or administrative ruling or doctrine, or any other source of authority;

9)   "Original Claim" means a Claim that has been denied or deemed denied;

10)  "Original Claim Appeal Deadline" means the date that is 60 days after receipt of the notice of denial for the Original Claim or a deemed denial;

11)  "Other Claim" means any claim for Damages arising under the Plan or any Law that is not a Routine Claim for Payment of Benefits, and includes, without limitation, Claims with respect to Plan amendments that reduce or eliminate Company contributions or Plan participation, or that relate to the Plan's investment performance;

12)  "Plaintiff" means any and all persons and entities seeking Damages from a Plan Party, whether or not pursuant to an Action;

13)  "Plan Party" means the Plan, SOPCO and its individual members, the Company, its Affiliates and any employee, officer or director of the Company or an Affiliate, and any employee, officer or director of the Company or an Affiliate to whom SOPCO, the Company or an Affiliate has delegated responsibility related to the Plan;

14)  "Related Claim" means a Claim related in any way to a Claim for which a written or electronic notice of denial has been issued or which has been deemed denied; and

15)  "Routine Claim for Payment of Benefits" means a claim that a specific Benefit is owed to the Claimant under the terms of the Plan.

b)  **General Authority.**  SOPCO shall administer the Plan in accordance with its terms and shall have all powers necessary to carry out the provisions of the Plan, except such powers as are specifically reserved to the Director, Human Resources, Eastman Kodak Company, or some other person.  In addition to any implied powers and duties that may be necessary or appropriate to the conduct of its affairs, and without limitation by reason of enumeration, SOPCO will have the power, the duty, and the complete and exclusive discretion:

1)  to make, publish and apply such rules and regulations as it may deem necessary to carry out the provisions of the Plan, including rules and regulations for determining the qualified status of domestic relations orders in accordance with Code section 414(p), and for administering distributions pursuant to Qualified Domestic Relations Orders;

2) to construe, interpret, and administer the terms of the Plan, to remedy any possible ambiguities in the terms of the Plan, and to determine conclusively, for all parties, all questions arising out of the interpretation or administration of the Plan;

3) to determine conclusively the right of any person to benefits under the Plan and the amount of such benefits, including, but not limited to, the determination of all questions relating to eligibility for participation and benefits;

4) to issue instructions to a Trustee to make disbursements from the Trust, and to make any other arrangement necessary or appropriate to provide for the orderly payment and delivery of disbursements from the Trust;

5) to decide any Routine Claim for Payment of Benefits or Other Claim;

6) to construe and interpret, after conferring with legal counsel as appropriate, the Law applicable to any Claim, including, without limitation:

   A) Routine Claims for Payment of Benefits, Claims relating to eligibility for Plan participation and/or Claims relating to breach of fiduciary duty under ERISA Section 502 and any other Claims;

   B) ERISA Section 510;

   C) common law doctrines, including, without limitation, unjust enrichment, equitable estoppel, detrimental reliance and prejudice;

   D) penalties under any Law;

   E) the Age Discrimination In Employment Act of 1967, Americans with Disabilities Act, Racketeer Influenced and Corrupt Organizations Act and the vesting and accrual provisions of the Internal Revenue Code; and

   F) whether attorneys' fees are warranted;

7)    to determine whether or not any person or entity is a fiduciary with respect to the Plan;

8)    to construe and interpret, with respect to provisions related to the Plan, Agreements, to remedy any possible ambiguities in such provisions, and to determine conclusively, for all parties, all questions arising out of the interpretation or application of such provisions;

9)    to determine conclusively the right of any person to, and the amount of, Damages with respect to any Claim or otherwise, subject to applicable Law, the Plan's terms, and the following:

   A)    a Claimant must provide conclusive, unambiguous proof of detrimental reliance to receive amounts to which he or any other person would otherwise not be entitled under the Plan's terms; and

   B)    absent the proof described in (A), award or payment of any such amounts, including, without limitation, compensatory and extracontractual damages is prohibited;

10)   to make factual findings related to carrying out the provisions of the Plan, including, without limitation, those necessary:

   A)    to interpret or apply any Law;

   B)    to interpret or implement the provisions of any Agreement; and

   C)    to interpret or implement the provisions of the Plan, including, without limitation, determining dates and other facts for purposes of applying time limits with respect to the claims and appeals process and Actions;

11)   to bind any Plan Party with such Plan Party's consent;

12)   to determine, without limitation:

A)   whether detrimental reliance has been established for purposes of Section 3.03(b)(9);

B)   whether a Claim is a Related Claim for purposes of Sections 3.05(d)(1) and (2), and 3.06(b);

C)   whether a Plaintiff has raised in litigation anything not raised in his appeal request for purposes of Section 3.06(e); and

D)   the amount of attorneys' fees and other expenses for purposes of Section 3.06(g).

13)   to compel either binding or non-binding arbitration or mediation with respect to any Claim for Damages (including either individual or class action arbitration); in such case, the arbitrator or mediator will be bound by the terms of the Plan;

14)   subject to Section 3.12, to delegate some or all of its authority under the Plan to any person or persons;

15)   to determine whether a Claim is a Routine Claim for Payment of Benefits or an Other Claim; and

16)   to allocate expenses of any kind as it deems appropriate, including, without limitation, those related to litigation.

## 3.04   Operation of SOPCO

SOPCO shall act by a majority of its members at the time in office, and such action may be taken by a vote at a meeting or without a meeting.  Any action taken without a meeting shall be reflected in a written instrument signed by a majority of the members of SOPCO.  A member of SOPCO who is also a Participant shall not vote on any question relating personally and uniquely to himself.  Any such question shall be decided by the majority of the remaining members of SOPCO.  SOPCO may authorize any one or more of its members to execute any document or documents on behalf of SOPCO, in which event SOPCO shall notify the Trustee in writing of such action and the name of its member so designated.  The Trustee will be provided with signature cards and such other reasonable assurances as it may require.  The Trustee thereafter shall accept and rely upon any document executed by such member as representing action by SOPCO until SOPCO shall file with the Trustee a written revocation of such designation.  SOPCO may adopt such by-laws or regulations as it deems desirable for the conduct of its

affairs.  SOPCO shall keep minutes, records, and other data as may be necessary for the proper administration of the Plan.

**3.05   Claims Review Procedure**

The provisions of this Section will apply notwithstanding anything in the Plan to the contrary.

a)     **Prerequisite.**  All Claims must be reviewed under, and satisfy the requirements of, the claims and appeals procedures described in this Article as a prerequisite for bringing an Action with respect to a Claim. Notwithstanding any provision of the Plan to the contrary, the claims and appeals procedures set forth in this Article will apply to all Claims that arise on or after, or were in existence on or before, August 1, 2006, except that with respect to Claims in existence before August 1, 2006, any applicable deadline will be the earlier of (i) the deadline that would have applied under the Plan as in effect prior to August 1, 2006; or (ii) the deadline described in this Article calculated by treating August 1, 2006 as the date on which the applicable time period for taking action began; provided that appeals for the review described in Section 3.05(d) that were pending as of August 1, 2006 will be considered timely if filed by the deadline as in effect prior to August 1, 2006.

b)     **Deadline.**  All Claims must be filed within the applicable time frame specified in Subsection (1) or (2) below.  Claims filed after these dates shall be denied automatically, all rights with respect to the Claim will lapse, and no Action may be filed with respect thereto.

    1)     **Routine Claims for Payment of Benefits.**  If the Claim is a Routine Claim for Payment of Benefits, such Claim must be filed with SOPCO, in a format acceptable to SOPCO, on or before the first anniversary of the date the person whose benefit is the subject of the Claim is first eligible for a distribution from the Plan (regardless of whether the person requested a distribution at such time) or, if earlier, on or before the first anniversary of the date the person knows or with reasonable diligence should know that there is an issue, dispute, problem or other Claim of any kind with respect to his benefit.

    2)     **Other Claims.**  If the Claim is an Other Claim, such Claim must be filed with SOPCO, in a format acceptable to SOPCO, within 60 days

of the date the person knows or with reasonable diligence should know that there is an issue, dispute, problem or other Claim of any kind with respect to the Plan.  For purposes of this Section, with respect to any such Claims arising as a result of a Plan amendment or change, a person is deemed to know that there is an issue, dispute, problem or other Claim of any kind with respect to the Plan on the date the amendment or change is first communicated to Participants (even if such date is prior to the effective date of the amendment or change).

c)   **Initial Claims Determination.**  SOPCO must notify the Claimant of its initial determination to deny a Claim no later than 90 days after the Claim is filed, except that an extension of an additional 90 days may be taken in special circumstances with notice to the Claimant before the initial 90-day period expires.

SOPCO will maintain a procedure under which any individual whose Claim has been denied will receive written or electronic notice which clearly sets forth the specific reason or reasons for such denial, the specific Plan provision or provisions on which the denial was based, any additional information necessary for the Claimant to perfect the Claim, if possible, an explanation of why such additional information is necessary, an explanation of the Plan's Claim review procedure, and a statement of the Claimant's right to file an Action under ERISA if his Claim is denied on appeal.  A Claim is considered denied in whole or part when SOPCO provides such notice to the Claimant.  However, if SOPCO fails to provide notice of an initial determination by the date set forth in this Section 3.05(c), the Claim is deemed denied on the last day of such period to the extent that it is not allowed by SOPCO during such period.

d)   **Appeal of Claim Denials**

1)   **Expired Claims.**  SOPCO will automatically deny an appeal in connection with a Claim made after the deadline set forth in Section 3.05(b), unless it is a Related Claim with respect to a Claim that was submitted by the applicable deadline, and all rights with respect to such untimely Claims shall permanently lapse upon expiration of the deadline set forth in Section 3.05(b) and no Action may be filed with respect thereto.  Timely appeals related to timely-filed Claims shall be reviewed in accordance with this Section 3.05(d).

2)   **Appeal Procedure.**  The Claimant may file a request for review until the expiration of the Original Claim Appeal Deadline.  When a denied Claim is appealed, the Claimant has the right to submit written comments, documents, records, and other information relating to the denied Claim to SOPCO.  The Claimant also can access or obtain copies of any documents, records and other information relevant to the denied Claim upon request and without charge, provided, however, that, unless otherwise required by ERISA, these rights are limited by applicable rules regarding attorney-client privilege, attorney work product privilege and other applicable privilege rules.  No form of communication other than a letter (for example, telephone or e-mail) shall constitute an appeal. Requests to review a Related Claim must be made to SOPCO no later than the Original Claim Appeal Deadline.  If a Plaintiff fails to request review of a Related Claim within such time, the Related Claim will not be part of the administrative record, and accordingly will not be eligible for judicial review.  To illustrate, a breach of fiduciary duty Claim that is related to an Original Claim but raised for the first time in litigation filed after the Original Claim Appeal Deadline will not be eligible for judicial review.

3)   **Requirement of Timely Appeal.**  Any person with respect to whom a Claim has been denied must appeal such denial by the Original Claim Appeal Deadline or he or she will be deemed to concur with that decision, and all rights with respect to such Claim will lapse and no Action may be filed with respect thereto.  The Original Claim Appeal Deadline shall not be extended if it is later determined that the notice of denial was not in complete technical compliance with all of the requirements under ERISA Section 503 (or any successor statute) and regulation 29 CFR 2560.503-1 (or any successor regulation) or other Law, unless SOPCO determines that such notice did not provide the Claimant with a sufficiently clear understanding of (i) SOPCO's position to permit an effective appeal, or (ii) the time limit for requesting review of the denied Claim.  In such case, SOPCO shall determine the appropriate time limit for requesting review.

4)   **Notification of Decision on Appeal.**  SOPCO will make its decision based on its review within 60 days (120 days if special circumstances require more time and the Claimant is so notified) of the date the Claimant files the request for review.  If the Claim is

denied on appeal, the Appeal Letter shall be a written or electronic notice which clearly sets forth the specific reason or reasons for such denial, the specific Plan provision or provisions on which the denial was based, a statement that in the case of a Routine Claim for Payment of Benefits, the Claimant is entitled to receive, upon request and without charge, reasonable access to and copies of all documents, records and other information relevant to the denied Claim (subject to applicable privilege rules), a statement describing any voluntary appeal procedures offered by the Plan and how to obtain information about those procedures, and a statement of the Claimant's right to file an Action under ERISA now that his Claim has been denied on appeal.  A Claim is deemed denied in whole or part when SOPCO provides the Appeal Letter to that effect to the Claimant.  However, if SOPCO fails to provide the Appeal Letter by the date set forth in this Section 3.05(d)(4), the Claim is deemed denied on the last day of such period to the extent that it is not allowed by SOPCO during such period.

5) **Submission of Evidence.**  SOPCO will not consider evidence submitted after the earlier of the deadline for requesting review of a Claim denial, or the date of SOPCO's decision regarding such review.  Accordingly, such evidence will not be part of the administrative record.

6) **Final Decision.**  SOPCO's decision will be final and binding upon all parties and cannot be modified upon review by a Court unless such decision or action is proven to be arbitrary or capricious.  Any decisions made by SOPCO pursuant to the authority granted under this Article, including, without limitation, factual determinations and legal interpretations, will be final and binding upon all parties and cannot be modified upon review by a Court unless such decision or action is proven to be arbitrary or capricious.

## 3.06   Limitations on Actions

The provisions of this Section will apply notwithstanding anything in the Plan to the contrary.

a) **Requirements of Article Must Be Satisfied.**  No Action may be commenced against any Plan Party, or otherwise in connection with the Plan, with respect to any Claim for which the requirements of this Article,

including, without limitation, the time limits for filing Claims, requests for review, appeals and Actions, have not been satisfied.

b)   **Exhaustion of Administrative Remedies Required.**  No Action may be commenced against any Plan Party, or otherwise in connection with the Plan, with respect to any Claim that SOPCO has not reviewed.  In the event an Action has been commenced with respect to any Claim, any new Claim raised during the Action, whether or not it is a Related Claim, is subject to all of the provisions of this Article, including, without limitation, the time limits for filing Claims, appeals and Actions, and requirement for SOPCO review.  The date a new Claim is filed with a Court as part of a new or amended complaint will be used to determine whether the Action with respect to such new Claim was commenced within the time limits set forth in Section 3.06(c), not the date that the Action was originally commenced.

c)   **Time Limits for Actions**

1)   **Establishment of Plan Limitations Period.**  No Action may be commenced against any Plan Party after the earliest to occur of the following dates:

A)   the date that is 90 days after the date of the Appeal Letter (or deemed denial on appeal), or

B)   the date that is 90 days from the date a cause of action accrued (provided that a person who files a timely Claim under the claims and appeals process described in this Section and who exhausts his remedies under such process shall be subject to the deadline described in (c)(1)(A) above rather than to this paragraph (c)(1)(B)).

For purposes of this Article, a cause of action accrues upon a clear denial or repudiation by a Plan Party or its agent that is known, or should with reasonable diligence be known, to the person bringing the Action, regardless of whether such person has filed a Claim in accordance with the provisions of this Article.  With respect to any Claims arising as a result of a Plan amendment or change, a person is deemed to know that there is an issue, dispute, problem or other Claim of any kind with respect to the Plan on the date the

amendment or change is first communicated to Participants (even if such date is prior to the effective date of the amendment or change).

2) **Alternative Limitations Period.** In the event a Court finds, for whatever reason, that one or both of the time limits in Section 3.06(c)(1) are unenforceable, no Action may be commenced against any Plan Party after the earliest to occur of the following dates:

   A) the date determined under Section 3.06(c)(1)(A) or (B) above, if one of those is enforceable;

   B) the date determined under the 1-year statute of limitations under Del. Code Ann. tit. 10 Section 8111 (or any successor thereto); for purposes of this Section 3.06(c)(2)(B), the Plan is governed by, and subject to, Delaware Law with respect to determining the most analogous state Law statute of limitations for claims; or

   C) the date determined by a Court.

3) **No Tolling.** Absent an express written agreement to the contrary, under no circumstances will the time limits set forth in this Article be tolled for any period, including, without limitation, time spent pursuing the claims and appeals process described in Section 3.05 or settlement negotiations.

d) **Forum.** For purposes of commencing an Action against any Plan Party, the Plan is deemed to be administered in Rochester, New York, any alleged breach is deemed to have occurred in Rochester, New York, and each Plan Party is deemed to reside in Rochester, New York. No Action may be commenced against any Plan Party other than in the Federal Court for the Western District of New York located in Rochester, New York. SOPCO shall have the complete and exclusive discretion to waive this requirement with respect to any Plaintiff.

e) **Administrative Record.** With respect to any denied Claim for which review is sought pursuant to Section 3.05, the administrative record of the Claim will be limited to those documents and such other evidence reviewed by SOPCO for purposes of investigating the denied Claim pursuant to Section 3.05. Should a Claimant subsequently seek timely judicial review of SOPCO's decision, a Court will not consider any evidence outside of the

administrative record in deciding the Action.  Therefore, a Plaintiff will be precluded from introducing in any Action any evidence or documents that were not included in the Claimant's written request to SOPCO for the review described in Section 3.05(d) with respect to such Claim (or otherwise properly submitted to SOPCO in connection with its review of the Claim).

Further, given the broad authority of, and discretion delegated to, SOPCO to review and decide the Law applicable to any Claim as described in Section 3.03(b)(11), and the intention that SOPCO will review and decide all Claims arising under the Plan, the Plaintiff will be precluded from introducing in any Action any of the following that were not included in the Claimant's written request to SOPCO for the review described in Section 3.05(d) with respect to such Claim (including Related Claims):

1)      any theory or argument under any Law;

2)      any Plan Party other than the Plan whom the Plaintiff believes is responsible for benefits or Damages; or

3)      any Damages not specifically described and, to the extent practicable, calculated in the request.

f)      **No Conflict of Interest.**  There shall be a presumption that SOPCO and the person, committee or entity to whom it may have delegated authority to hear Claims have no conflict of interest that would prevent them from rendering an independent, impartial review of any Claim.  Any person who requests review of a Claim must raise any conflict of interest issues in such request, or such issues cannot be raised by such, or any other, person against any Plan Party in any Action related to the Claim.  Unless conflict of interest issues are raised in the request, the person requesting review, and any other person who is a party to an Action related to the Claim, is deemed to acknowledge that no conflict of interest exists.

g)      **Attorneys' Fees and Other Expenses**

1)      **Plan Party Prevails.**  In the event that a Plan Party is the prevailing party in an Action (including, without limitation, as a result of a motion, final judgment, settlement or the Plaintiff withdrawing from the Action), unless a Court determines otherwise, the Plaintiff must, with respect to each Plan Party in the Action, within 60 days of the

end of the Action with respect to a Plan Party, reimburse the Plan Party for all expenses incurred in defending the Action, including, without limitation, attorneys' fees. Each Plaintiff is jointly and severally liable for all such expenses. SOPCO shall have the complete and exclusive discretion to modify or waive these expenses with respect to any Plaintiff.

2) **Plaintiff Prevails.** In the event that the Plaintiff is the prevailing party in an Action, no Plan Party shall be liable for the expenses incurred by the Plaintiff with respect to the Action, including, without limitation, attorneys' fees, unless, and only to the extent, a Court determines otherwise.

3) **Limitation of Liability.** Notwithstanding anything herein to the contrary, no Plan Party shall be liable for expenses, including, without limitation, attorneys' fees, in excess of those required by a Court under ERISA Section 502(g) (or any successor thereto). Accordingly, without limiting the immediately preceding sentence, no Plan Party shall be liable for, and Plan assets are prohibited from being used to pay, contingency fees of any kind, including, without limitation, those in class action cases.

h) **Plan Party Defenses.** The Plan Parties reserve all rights to raise any defense in the event of an Action, regardless of whether it was raised in the Appeal Letter.

## 3.07   Miscellaneous

a) **No Waiver.** The failure by any Plan Party or its agent to enforce any provision of this Article at any time or from time to time, and with respect to any person or persons, shall not be construed to be a waiver of such provision, nor in any way limit a Plan Party's or its agent's ability to enforce such provision in any situation.

b) **Severability.** If part or all of any of the provisions of this Plan shall be held or deemed to be or shall in fact be inoperative or unenforceable as applied in any particular situation, such circumstances shall not have the effect of rendering any other parts of the provision at issue or other provisions herein contained invalid, inoperative or unenforceable to any extent whatsoever.

### 3.08    Power to Appoint Advisers

SOPCO may appoint such accountants, attorneys, investment advisers, "investment managers" as defined by ERISA, specialists, and other persons as it deems necessary or desirable in connection with the administration of this Plan.  Such accountants and attorneys may, but need not, be accountants and attorneys who otherwise act for and on behalf of the Company.  SOPCO shall be entitled to rely upon any opinions or reports which shall be furnished to it by any such accountant, attorney or other specialist.

### 3.09    Expenses

Expenses of the Plan, unless paid by the Company, shall be paid out of the Trust.

### 3.10    Duties of Fiduciaries

All fiduciaries under the Plan and Trust shall act solely in the interests of the Participants and their Beneficiaries and in accordance with the terms and provisions of the Plan, the Trust Agreement and ERISA, and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.  Any person may serve in more than one fiduciary capacity with respect to the Plan and Trust.

### 3.11    Liability

No member of SOPCO shall incur any liability for any action or failure to act, excepting only liability for his own breach of fiduciary or co-fiduciary duty.  The Company shall indemnify and reimburse to the fullest extent permitted by law each member of SOPCO and any Employee acting on its behalf against any and all claims, loss, damages, expense, and liability arising from any act or failure to act.

### 3.12    Allocation of Responsibility

The Board, Director, Human Resources, Eastman Kodak Company, SOPCO, and the Trustee possess certain specified powers, duties, responsibilities and obligations under the Plan and Trust.  It is intended under this Plan and Trust that each be responsible solely for the proper exercise of its own functions and that each shall not be responsible for any act or failure to act of another, unless otherwise responsible for a breach of its own fiduciary duty or for breach of duty by another fiduciary under the rules of co-fiduciary responsibility.  Generally, the Board is responsible for determining the amount of the Company contribution to the Plan for any Plan Year; and the Director, Human

Resources, Eastman Kodak Company shall be responsible for amending and terminating the Plan and Trust. SOPCO is responsible for appointing and removing the Trustee, and for administering the Plan as described herein; and the Trustee is responsible for the management and control of the Plan assets to the extent provided in the Trust. SOPCO may act to allocate or delegate fiduciary duties by designating persons and committees other than named fiduciaries to carry out fiduciary responsibilities under the Plan (other than trustee responsibilities as defined in section 405(c)(3) of ERISA), but such action may be taken only in accordance with the following procedure:

a) Such action must be approved by at least a majority of the members of SOPCO;

b) If such action is not unanimously approved, the vote cast by each member for or against such action shall be recorded as a part of the official minutes of SOPCO; and

c) Any delegation of fiduciary responsibilities or any allocation of fiduciary responsibilities among members of SOPCO may be modified or rescinded by SOPCO according to the procedure set forth in subsections (a) and (b) of this Section.

## 4. PARTICIPATION

### 4.01 Eligibility Requirements

Each individual who is an Employee on the last scheduled workday of the Company's fiscal year ending within the Plan Year for which a contribution will be made to the Trust and who, prior to such Plan Year, was credited with at least one Hour of Service is eligible for an allocation of any contribution made for the Plan Year.

### 4.02 Service with Affiliates

For purposes of determining eligibility, each Employee shall receive credit for periods of employment with either an Affiliated Company or a subsidiary of the Company which is not included in this Plan, for periods of service as a "Leased Employee" within the meaning of section 414(n) of the Code, and for periods which would have been worked as a "Leased Employee" but for the requirement that services be performed on a substantially full-time basis for a period of at least one year.

## 4.03   Termination

An Employee's service shall terminate upon severance of employment with the Company except as indicated for transfers in Section 10.05, but such Employee's participation in the Plan shall not terminate until the date upon which the last distribution is made from such Employee's account pursuant to the Plan.

## 4.04   Participation Upon Reemployment

Any former Employee who is reemployed will receive credit for prior Hours of Service in determining eligibility under Section 4.01.

## 5.   CONTRIBUTIONS

## 5.01   Company Contributions.

a)   For each Plan Year, Company contributions may be paid to the Trust in such amounts (or under such formula) and at such times as may be determined by the Board; provided that, if and to the extent necessary, a Company Contribution shall be made for a Plan Year in an amount sufficient to comply with the allocation requirement of Section 8.03(c). Company contributions under the Plan for a Plan Year may be paid during the Plan Year and shall in any event be paid not later than the due date for filing the Company's federal income tax return for that year, including any extensions of such due date. Except as otherwise permitted under section 404(a)(9) of the Code, Company contributions under the Plan for any Plan Year shall not be paid to the Trust in amounts which would exceed 15% of the Compensation of all Participants entitled to share in allocations thereof for that Plan Year, including any carryover amount for previous Plan Years allowable by section 404(a)(3)(A) of the Code. In no event shall Company contributions in any Limitation Year exceed an amount which would cause:

1)   Annual Additions to the accounts of any Participant to exceed the Maximum Permissible Amount for that Limitation Year (except as provided in Section 8.04); or

2)   The sum of the defined benefit plan fraction (as defined in Section 8.04) and the defined contribution plan fraction (as defined in Section 8.04) to exceed 1.0 for that Limitation Year.

b)   Company contributions may be paid to the Trust in cash or in shares of Employer Securities, as determined by the Board; provided that Company contributions shall be paid in cash in such amounts, and at such times (subject to the limitations described in Section 8.04), as needed to provide the Trust with funds sufficient to pay in full when due any principal and interest payments required by a Loan incurred by the Trustee pursuant to Article VII to finance the acquisitions of Employer Securities, except to the extent such principal and interest payments have been satisfied by the Trustee from cash dividends paid to it with respect to Employer Securities.

c)   All Company contributions for a Plan Year shall be allocated to the Company Contribution Account when paid.  As of the close of the last day of each Plan Year, amounts in the Company Contribution Account, including amounts contributed after such last day under subsection (a) above shall be allocated to Participants' Accounts as provided in Article VIII.

d)   No Participant shall be required or permitted to make contributions to the Plan or Trust.

e)   All Company contributions made under the Plan are conditioned upon the qualification of the Plan under section 401(a) of the Code and upon the deductability of the contribution under section 404 of the Code.

## 5.02   Exclusive Benefit of Employees

All contributions made pursuant to the Plan shall be held by the Trustee in accordance with the terms of the Trust Agreement for the exclusive benefit of those Employees who are Participants under the Plan, including former Employees, and their Beneficiaries, and shall be applied to provide benefits under the Plan and to pay expenses of administration of the Plan and the Trust, to the extent that such expenses are not otherwise paid.  At no time shall any part of the Trust Fund (other than such part as may be required to pay administration expenses and taxes) be used for, or diverted to, purposes other than for the exclusive benefit of such Employees and their Beneficiaries.  Without regard to the provisions of this Section, however:

a)   If a contribution is conditioned upon the deductability of the contribution under section 404 of the Code, then to the extent the deduction is disallowed, the Trustee shall upon written request of the Company, return the contribution (to the extent disallowed) and any increment thereon to the Company within one year after the date the deduction is disallowed; and

b)  If a contribution or any portion thereof is made by the Company by a mistake of fact, the Trustee shall, upon written request of the Company, return the contribution or such portion and any increment thereon to the Company within one year after the date of payment to the Trustee.

## 6.  INVESTMENT OF TRUST ASSETS

### 6.01  Investments

The Trust Fund will be invested primarily in Employer Securities.  SOPCO may direct the Trustee to incur Debt from time to time to finance the acquisition of Employer Securities by the Trust or otherwise.  The Trust Fund may be used to acquire shares of Employer Securities from Company shareholders (including former Participants) or from the Company.  The Trustee may also invest the Trust Fund in savings accounts, certificates of deposit, high-grade short-term securities, equity stock, bonds, or other investments desirable for the Trust, or the Trust Fund may be held in cash.  All investments, except those made in the course of short-term cash management, will be made by the Trustee only upon the direction of SOPCO.  SOPCO may direct that the entire Trust Fund assets be invested and held in Employer Securities.

### 6.02  Employer Securities

All purchases of Employer Securities by the Trust will be made at a price which does not exceed the fair market value of such Employer Securities, as determined in good faith by SOPCO.  Employer Securities purchased with the proceeds of a Loan shall be held in the Loan Suspense Account pending release to other accounts as the Loan is paid.  SOPCO may direct the Trustee to sell or resell shares of Employer Securities to any person, including the Company, provided that any such sales to any disqualified person, including the Company, will be made in conformance with section 408(e) of ERISA at no less than fair market value as determined under this Section and no commission shall be charged.

## 7.  EXEMPT LOANS

### 7.01  Loans

Eastman Kodak Company may direct the Trustee to obtain Loans.  Any such Loan will meet all requirements necessary to constitute an "exempt loan" within the meaning of

section 4975(d)(3) of the Code and Treasury Regulations section 54.4975-7(b)(1)(iii) and shall be used primarily for the benefit of the Participants and Beneficiaries. The proceeds of any such Loan shall be used, within a reasonable time after the Loan is obtained, only to purchase Employer Securities, repay the Loan, or repay any prior Loan. Any such Loan shall provide for no more than a reasonable rate of interest (as determined under Treasury Regulation section 54.4975-7(b)(7)) and must be without recourse against the Plan. The number of years to maturity under the Loan must be definitely ascertainable at all times. The only assets of the Plan that may be given as collateral on a Loan are shares of Employer Securities acquired with the proceeds of the Loan and shares of Employer Securities that were used as collateral on a prior Loan repaid with the proceeds of the current Loan. Such Employer Securities, whether or not pledged, shall be placed in a Loan Suspense Account. No person entitled to payment under a Loan shall have recourse against the Trust Fund, other than such collateral, contributions (other than contributions of Employer Securities) that are available under the Plan to meet obligations under the Loan, and earnings attributable to such collateral and the investment of such contributions. A Loan shall not be payable on demand except in the event of default. In the event of default of a Loan, the value of Plan assets transferred in satisfaction of the Loan shall not exceed the amount of default. Any Employer Securities in the Loan Suspense Account must provide for the release of shares upon the payment of any portion of the Loan. The number of shares to be released will be determined in the following manner:

a) If the Loan provides annual payments of principal and interest at a cumulative rate that is not less rapid at any time than level annual payments of principal and interest over ten years, then SOPCO may specify for each Plan Year during the duration of the Loan that the number of shares of Employer Securities released from such pledge shall equal the number of encumbered securities held immediately before release for the current Plan Year multiplied by a fraction, the numerator of which is the principal paid in such Plan Year and the denominator of which is the sum of the numerator plus the principal to be paid for all future years. Such years will be determined without taking into account any possible extension or renewal periods. To the extent that the net proceeds received by the Plan in respect of any Loan exceed the stated principal amount of the Loan, that portion of any interest payment that would be deemed to be a repayment of principal under standard loan amortization tables shall be treated as principal paid or principal to be paid, as the case may be, for purposes of the above calculation.

b) If the Loan does not satisfy the conditions stated in subsection (a), then for each Plan Year during the duration of the Loan, the number of shares of

Employer Securities released from such pledge shall equal the number of encumbered securities held immediately before release for the current Plan Year multiplied by a fraction the numerator of which is the sum of principal and interest paid in such Plan Year and the denominator of which is the sum of the numerator plus the principal and interest to be paid in all future years.  Such years will be determined without taking into account any possible extension or renewal periods.  If interest on any Loan is variable, the interest to be paid in future years under the Loan shall be computed by using the interest rate applicable as of the end of the Plan Year.

c) Should a Loan initially satisfying the conditions stated in subsection (a) at some subsequent date cease to satisfy the conditions of such subsection, by reason of renewal, extension, or refinancing of the Loan, then subsection (b) shall be applied in determining the shares released upon payment of any principal or interest after such date.

d) Employer Securities released from encumbrance pursuant to this Section shall be allocated among Participants' Accounts in accordance with Article 8.

**7.02  Loan Payments**

a) Payments of principal and interest on any Loan during a Plan Year shall be made by the Trustee (as directed by SOPCO) only from:

1) Cash dividends received by the Trust with respect to Employer Securities acquired with the proceeds of a loan; provided that cash dividends with respect to Employer Securities acquired after August 4, 1989 shall be used to make payments on a Loan only if the dividends are on Employer Securities acquired with that Loan; and provided further that, to the extent dividends on Employer Securities allocated to a Participant's Account are used to make a loan payment, Employer Securities with a fair market value not less than the amount of the dividend that would have been allocated to the Participant's Account but for the loan payment shall be allocated in accordance with Section 8.03 to the Participant's Account in the Plan Year in which the dividend would otherwise have been allocated;

2) Company contributions to the Trust made to meet the Plan's obligation under a Loan (other than contributions of Employer

Securities) and from any earnings attributable to Employer securities acquired with the proceeds of a Loan whether or not such Employer Securities are held as collateral for a Loan, and investments of such contributions (both received during or prior to the Plan Year);

3)   The proceeds of a subsequent Loan made to repay a prior Loan; and

4)   The proceeds of the sale of any Employer Securities acquired with the proceeds of a Loan.  Such contributions and earnings must be accounted for separately by the Plan until the Loan is repaid.

b)   Notwithstanding any amendment to or termination of the Plan which causes it to cease to qualify as an employee stock ownership plan within the meaning of section 4975(e)(7) of the Code, or any repayment of a loan, except as otherwise permitted under section 409(l) of the Code, no shares of Employer Securities acquired with the proceeds of a Loan obtained by the Trust to purchase Employer Securities may be subject to a call either while such shares are held by the Plan or when such shares are distributed from the Plan.

## 8.   ALLOCATIONS TO PARTICIPANTS' ACCOUNTS

### 8.01   Separate Accounts

Separate Participant Accounts will be established to reflect each Participant's interest under the Plan, which shall be maintained as units.

### 8.02   KESOP Accounts

The KESOP Account maintained for each Participant will consist of two accounts:  the "Kodak Convertible Preferred Stock Account" which will hold the shares of Convertible Preferred Stock  acquired with the proceeds of a Loan that have been released from the Loan Suspense Account pursuant to Article VII; and the "Kodak Stock Account" which will hold the shares of Kodak Stock acquired with the proceeds of a Loan that have been released from the Loan Suspense Account  pursuant to Article VII, and which will hold Company Contributions made or invested in shares of Kodak Stock.  The Kodak Convertible Preferred Stock Account and the Kodak Stock Account maintained for each Participant will be credited with his allocable share determined under Section 8.03 of Employer Securities (including fractional shares) purchased and paid for by the Trust or

contributed in kind to the Trust and with any stock dividends on Employer Securities allocated to such Accounts. Units representing Employer Securities acquired by the Trust with the proceeds of a Loan obtained pursuant to Article VII shall be allocated to such Accounts according to the method set forth in Section 8.03, as the Employer Securities are released from Suspense Accounts as provided for in Section 7.01.

## 8.03   Allocation of Company Contributions

Units representing Employer Securities and any other investments held in the Company Contribution Accounts, and any units representing Employer Securities released from encumbrance pursuant to Section 7.01, shall be allocated as of the close of the last day of each Plan Year (even though receipt of the Company contributions by the Trustee may take place after the close of each Year) among the KESOP Accounts of eligible Participants as follows:

a) Contributions shall be allocated to each individual who is an Employee on the last scheduled workday of the Company's fiscal year ending within the Plan Year for which a contribution will be made to the Trust and who, prior to such Plan Year, was credited with at least one Hour of Service.

b) All allocations pursuant to subsection (a) above shall be made on the basis of the ratio of each eligible Employee's Compensation to the total Compensation of all eligible Employees entitled to share in the allocation for such Plan Year, provided that in no case shall less than one share of Employer Securities be allocated to any Participant Account in any year in which a Company Contribution is made.

c) Notwithstanding the foregoing, to the extent dividends on Employer Securities allocated to a Participant's Account are used to make a loan payment, Employer Securities with a fair market value not less than the amount of the dividend that would have been allocated to the Participant's Account but for the loan payment shall, as a minimum, be allocated to the Participant's Account in accordance with Section 8.03(b) above in the Plan Year in which the dividend would otherwise have been allocated.

d) Notwithstanding the foregoing, in no event shall an allocation of Annual Additions be made to the Participant Account of any Participant for any Limitation Year which would cause Annual Additions to the Participant Account of such Participant to exceed the Maximum Permissible Amount for that Year (except as permitted in Section 8.04) or the sum of the

defined benefit plan fraction (as defined in Section 8.04) and the defined contribution plan fraction (as defined in Section 8.04).

## 8.04   Maximum Allocation

a)   Notwithstanding any provision of the Plan to the contrary, no more than one-third of the Company contributions for a Limitation Year shall be allocated to the group of Employees consisting of highly compensated employees (within the meaning of section 414(q) of the Code).

b)   The amount of the Annual Addition which may be credited to any Participant's Account under the Plan as of any allocation date shall not exceed the Maximum Permissible Amount (based upon his Compensation up to such allocation date) reduced by the sum of any credits of Annual Additions accrued to the Participant's Account as of any preceding allocation date within the Limitation Year under all defined contribution plans maintained by the Company and any other entity required to be aggregated with the Company under sections 414(b) or 414(c) (as modified by section 414(h)) or 414(m) of the Code.  If an allocation date of this Plan coincides with an allocation date of any other qualified defined contribution plan maintained by the Company, the allocation date of this Plan shall be deemed to fall after the allocation date of the other plan.

c)   The limitations imposed by subsection (b) shall not apply to Company contributions which are deductible as interest payments on a loan under section 404(a)(9)(B) of the Code and charged against a Participant's Account.

d)   If the limitation on allocations in subsections (b) and (c) above would be exceeded in any Limitation Year for any Participant as a result of the allocation of forfeitures under the Plan or reasonable error in estimating a Participant's Compensation, or under such other limited facts and circumstances which the Commissioner of the Internal Revenue Service finds justify the availability of this subsection (d), the amount in excess of such limits shall be placed, unallocated to any Participant, in a Limitation Account.  If a Limitation Account is in existence at any time during a particular Limitation Year, other than the Limitation Year described in the preceding sentence, all amounts in the Limitation Account must be allocated to Participants' Accounts (subject to the limits of this Section) before any Company contributions which would constitute Annual Additions may be made to the Plan for that Limitation Year.  The excess amount

Case 6:12-cv-06146-DGL   Document 6-4   Filed 03/26/12   Page 36 of 62

BENEFIT PLAN 1C.02
Kodak Employee Stock Ownership Plan
Effective Date:  January 1, 2007
As Amended:  November 24, 2010
Page 35

allocated pursuant to this subsection (d) shall be used to reduce Company contributions for the next Limitation Year (and succeeding Limitation Years, as necessary) for all of the Participants in the Plan.  The Limitation Account will not share in the valuation of Participants' Accounts and the allocation of earnings of the Plan, and the change in fair market value and allocation of earnings attributable to the Limitation Account shall be allocated to the remaining accounts hereunder as set forth in this Section.

e)    Upon termination of the Plan, any amounts in a Limitation Account at the time of such termination shall revert to the Company.

f)    In the event that any Participant under this Plan is also a Participant in a defined benefit plan (as defined in section 415(k) of the Code) maintained by the Company, the sum of the defined benefit plan fraction and the defined contribution plan fraction(as such terms are defined in section 415(e) as adjusted by section 416(h) of the Code) for any Limitation Year with respect to such Participant shall not exceed 1.0.  For purposes of this Section, a plan is deemed to be maintained by the Company if the plan is maintained by any employer that is, along with the Company, a member of a controlled group of corporations or under common control (as defined in section 414(b) and (c) of the Code, as modified by section 415(h) thereof) or a member of an affiliated service group (as defined in section 414(m) of the Code).

## 8.05   Vesting

Each Participant shall at all times be 100% vested in his KTRASOP Account and his KESOP Account.

## 8.06   Valuation of Accounts

As of each Valuation Date, SOPCO shall determine the value of a unit in each account by dividing the fair market value (as determined by the Trustee) of all property in each such account as of such Valuation Date (after deducting any expenses or other amounts including distributions properly chargeable against such account) by the number of units then outstanding to the credit of all Participants in each such account.  In the discretion of SOPCO, units may be split or combined to facilitate the administration of accounts with similar type investments.  Calculations of the value of a unit and of any number of units whenever made pursuant to the provisions of this Plan shall be carried to the third decimal place.

### 8.07   Accounting for Allocations

SOPCO shall adopt accounting procedures for the purpose of making the allocations, valuations and adjustments to Participants' Accounts provided for in this Article.  Except as provided in Treasury Regulation section 54.4975-11(d), Employer Securities acquired by the Plan shall be accounted for as provided under Treasury Regulation section 1.402(a)-1(b)(2)(ii) and the Committee shall maintain adequate records of the cost basis of all shares of Employer Securities allocated to each Participant's Accounts.  From time to time, SOPCO may modify the accounting procedures for the purpose of achieving equitable and nondiscriminatory allocations among Participant Accounts in accordance with the general concepts of the Plan and the provisions of this Section.  Valuations of Trust Assets shall be made at fair market value, as described in Section 8.06.

### 8.08   Special Valuation Provisions

Notwithstanding anything to the contrary expressed or implied herein, SOPCO (with the consent of the Trustee) may direct on a nondiscriminatory basis a special valuation date in order to avoid prejudice either to continuing Participants or to terminating Participants. Such special valuation date shall be deemed equivalent to a regular valuation date.

## 9.   DIVERSIFICATION AND DIVIDEND DISTRIBUTIONS

### 9.01   Diversification Distributions

a)   Each Participant who has attained age 55 and who has completed at least ten (10) years of participation in the Plan (a "Qualified Participant") may direct the Plan to distribute an amount determined under subsection (b) below from the Participant's Account after the close of each Plan Year in the six Plan Year period commencing with the later of:

   1)   The first Plan Year in which the Participant becomes a Qualified Participant or

   2)   The first Plan Year in which the fair market value of the Employer Securities treated under Code section 401(a)(28) as acquired after 1986 and allocated to the Participant's Account exceeds $500 (the "Election Period").

Case 6:12-cv-06146-DGL   Document 6-4   Filed 03/26/12   Page 38 of 62

BENEFIT PLAN 1C.02
Kodak Employee Stock Ownership Plan
Effective Date:  January 1, 2007
As Amended:  November 24, 2010
Page 37

b)    A Qualified Participant may direct the Plan to distribute

1)    After each Plan Year in the Election Period other than the last such Plan Year, cash equal to the value of 25% of the total number of shares of Employer Securities treated under section 401(a)(28) of the Code as acquired after 1986 (minus any amount to which a prior election applied) and allocated to the Participant's Account; and

2)    After the last Plan Year in the Election Period, cash equal to the value of 50% of the total number of shares of Employer Securities treated under section 401(a)(28) of the Code as acquired after 1986 (minus any amount to which a prior election applied) and allocated to the Participant's Account, reduced by the number of shares of Employer Securities previously distributed pursuant to this Section 9.01.

c)    The Participant's direction shall be provided to SOPCO during the 90-day period after the close of the Plan Year, shall be provided in a manner approved by SOPCO, and may be modified or revoked at any time during such 90-day period.  This Section 9.01 shall apply notwithstanding any other provision of the Plan other than such provisions as require the consent of the Participant.

d)    SOPCO shall direct the Trustee to make payment of the Adjusted Balance of the Participant's Account specified by the Participant pursuant to subsection (c) above, and the Trustee shall complete such distribution, within the 90-day period following the 90-day period described in subsection (c).  Notwithstanding Section 10.04, which gives the Participant the right to demand distributions in Employer Securities, distributions under this Section shall be in cash.

e)    For purposes of distributions under this Section, the Participant's Account shall be valued as of the Valuation Date immediately preceding the distribution.

**9.02  Dividend Distributions**

a)    A Participant may, in a manner approved by SOPCO, elect to receive entirely in cash dividends paid with respect to Employer Securities held under the Plan which are allocated to the Accounts of such Participants and which are not applied to the repayment of a Loan pursuant to Section

7.02.  Such election may be made even if the Participant is not otherwise eligible to receive a distribution from the Plan.  The Company may pay such dividends directly to Participants, or may pay such dividends to the Trustee.  If such dividends are paid to the Trustee, the Trustee shall pay such dividends to Participants by the 90th day after the end of the Plan Year in which the dividends are paid by the Company.

b)      Any election (whether actual or deemed) made pursuant to this Section 9.02 remains in effect until changed by a Participant.  Elections can be made or revoked at any time, subject to administrative practicality.  SOPCO may establish a cut-off date for any particular dividend, such that elections made or revoked after the cut-off date will not be effective with respect to such dividend.

c)      Unless a Participant elects, in a manner approved by SOPCO, to receive dividends entirely in cash under subsection (a), dividends attributable to the Participant's interest in Employer Securities held by the Plan will be reinvested in Employer Securities under the Plan on behalf of the Participant.

d)      Unless otherwise determined by SOPCO, the amount of dividends paid to or reinvested on behalf of a Participant under this Section 9.02 will be proportionate to the Participant's interest in the Employer Securities on which such dividends were paid on the day before the ex-dividend date, or as of such other date as established by SOPCO.

e)      Without limiting the authority provided by Article 3, SOPCO shall have the authority under this Section 9.02 to establish a separate account to hold dividends paid with respect to Employer Securities held by the Plan for the period of time before such dividends are distributed under subsection (a) or reinvested under subsection (b).  Any investment income attributable to such account will from time to time be credited to and considered income of the Plan, to the extent not used to pay Plan expenses.

f)      Regardless of when dividend payments are actually made to a Participant's Account or to the Participant in cash, in no event will the Plan, SOPCO or the Company be liable for interest, investment returns or any other amount relating to the timing of a payment.

g)      This Section 9.02 is intended to satisfy the requirements provided in section 404(k)(2)(A)(iii) of the Code, as in effect after December 31, 2001,

regarding the deductibility of dividends paid with respect to employer securities held by an employee stock ownership plan.  This Section shall be administered and construed accordingly.  Any modification or amendment of the Plan may be made retroactively, as necessary or appropriate, to meet any requirement of section 404(k) of the Code. The election provided under this Section 9.02 is available only to the extent that the Company may deduct dividends subject to such an election and paid with respect to Employer Securities held by the Plan under section 404(k) of the Code.  In the event that dividends subject to such an election cease to be deductible, dividends will be distributed in cash pursuant to subsection (a) unless applied to repayment of a Loan pursuant to Section 7.02.

## 10.    PLAN DISTRIBUTIONS

### 10.01 Distribution Date

The amount allocated to each Participant's Account is fully vested.  Upon the Participant's severance of service in accordance with Section 10.5, distribution of a Participant's benefits shall be made:

a)    if the Participant does not consent to an earlier distribution, the April 1st of the calendar year after the calendar year in which the Participant turns 70½;  or

b)    if earlier, as soon as administratively practicable after the date specified by the Participant in a manner approved by SOPCO.

Notwithstanding any provision of the Plan to the contrary, distribution shall be made no later than the April 1st of the calendar year following the later of the year in which the Participant attains age 70½ or the year in which the Participant has severed service in accordance with Section 10.05, except that distribution for a Participant who is a 5-percent owner (as defined in Code section 416) shall be made no later than April 1 of the calendar year following the calendar year in which such Participant attains age 70 ½.

If a Participant is eligible to share in any contribution to be made after distribution of his Account, distribution of the Participant's interest in such contribution will be made as soon as practicable after his interest is allocated to his Account.  In the event a Participant is not living as of any such Distribution Date, distribution will be made to the person designated or determined in accordance with Section 10.02.

## 10.02  Beneficiary

Each Participant may designate and may change a beneficiary or beneficiaries to receive benefits in the event of his death prior to the complete distribution of benefits to him; except that, the entire sum credited to the account of a Participant in the case of his death shall be paid to the Participant's surviving spouse (if there is one) unless such spouse consents to the designation of beneficiary named by the Participant in the manner required by law.  Such designation or designations shall be on forms supplied by SOPCO.  Any change in beneficiary shall become effective only upon receipt of the form by SOPCO.  If the Participant has no surviving spouse and has not completed a valid designation of another beneficiary, the balance of the deceased Participant's account or accounts will be paid to the Participant's estate.

For purposes of this Section, SOPCO must be satisfied that a Participant does or does not have a spouse, or that the Participant is deemed not to have a spouse because no spouse can be located, because the Participant has a court order to the effect that the Participant is either legally separated or has been abandoned (as legal separation and abandonment are defined under local law), or because of such other circumstances as may be prescribed by regulations issued under the Code.

## 10.03  Method of Distribution

When a Participant or his Beneficiary, as the case may be, becomes entitled to a distribution from the Trust Fund, as provided for in Section 10.01, the entire value of the Participant's Account will be distributed in a lump sum.

## 10.04  Form of Distribution

The Participant's Account shall be distributed to a Participant or his Beneficiary, as the case may be, in one, and only one, of the following forms:

a)   Cash

b)   Whole shares of Kodak Stock (with a payment in cash for any fractional share).  For purposes of this form of distribution, shares of Kodak Stock, including fractional shares, derived from the sale to the Company or conversion of any Convertible Preferred Stock held in the KESOP account shall be added to any shares of Kodak Stock, including fractional shares, held in the KTRASOP Account in order to determine the number of whole shares of Kodak Stock prior to making distribution.

Any other provisions of this Section to the contrary notwithstanding, a distribution shall be made entirely in cash unless:

c)      the Participant makes an election, in a manner approved by SOPCO, to receive Kodak Stock; or

d)      in the event of the Participant's death, his Beneficiary, within 30 days of obtaining notification of a pending distribution, makes an election, in a manner approved by SOPCO, to receive Kodak Stock.

For purposes of distributions under this Article 10, a Participant's Account shall be valued as of the Valuation Date immediately preceding the Distribution Date.

## 10.05  Severance of Service

Generally, a Participant is considered to have severed his service for purposes of Section 10.01 only when he has voluntarily or involuntarily severed his service as an Employee with any Affiliated Company.  A Participant who was not considered to have terminated his employment under the terms of Sections 10.05(b) or 10.05(c) of the Plan in effect prior to April 1, 2002, will be deemed to have terminated his employment for purposes of Section 10.01 as of April 1, 2002 (so long as he is otherwise treated as terminated under this Section 10.05).  Notwithstanding the above, the transfer of an Employee from the employ of one Affiliated Company to another or from the employ of an Affiliated Company to an entity that has assumed sponsorship of the Plan (or an entity that, together with such entity, is treated as part of a controlled group of corporations or as a single employer pursuant to Code sections 414(b), (c), (m) or (o)) will not constitute a severance of the Employee's service for purposes of Section 10.01.

## 10.06  Transfers

Where a Participant leaves the employ of the Company to enter the employ of an Affiliated Company which is not participating in the Plan, he will not be deemed to have severed employment under uniform rules to be administered by SOPCO.

## 10.07  Administrative Powers Relating to Payments

If a Participant or Beneficiary is under a legal disability or, by reason of illness or mental or physical disability, is in the opinion of SOPCO not able to properly attend to his personal financial matters, the Trustee may make such payments to the legal representative of such Participant or Beneficiary.

Any payment made pursuant to this Section shall be in complete discharge of the obligation therefor under the Plan.

## 10.08  Direct Rollover

At the election of a Participant or his spouse or former spouse entitled to a distribution under the foregoing provisions of this Article 10, SOPCO shall direct the Trustee to make a direct rollover to the trustee or other custodian of any one (but only one) "eligible retirement plan" by any reasonable means (including providing the Participant or spouse or former spouse with a check made payable only to the trustee or custodian) of all, or a specified portion of at least $500, of an "eligible rollover distribution," subject to the following restrictions:

a)  An "eligible rollover distribution" is any distribution of all or any portion of the Participant's account, except that an "eligible rollover distribution" does not include

1)  any distribution that is one of a series of substantially equal periodic payments (made not less frequently than annually) made for the life (or life expectancy) of the recipient or the joint lives (or joint life expectancies) of the recipient and the recipient's designated beneficiary, or for a specified period of at least ten years,

2)  any distribution required under Code section 401(a)(9), or

3)  any hardship distribution described in section 401(k)(2)(B)(i)(iv), in the event such a hardship distribution were ever to be provided by the plan.

b)  An "eligible retirement plan" is an individual retirement account described in Code section 408(a), an individual retirement annuity described in Code section 408(b), an annuity plan described in Code section 403(a), or a qualified trust described in Code section 401(a), that accepts the recipient's "eligible rollover distribution." If the recipient is the Participant's surviving spouse, but not an alternate payee receiving a distribution pursuant to a Qualified Domestic Relations Order, an "eligible retirement plan" is an individual retirement account described in Code section 408(a) or an individual retirement annuity described in Code section 408(b) that accepts the surviving spouse's "eligible rollover distribution," but not an annuity plan

described in Code section 403(a) nor a qualified trust described in Code section 401(a).

Notwithstanding the above, for distributions made after December 31, 2001, an "eligible retirement plan" shall also mean an annuity contract described in section 403(b) of the Code and an eligible plan under section 457(b) of the Code which is maintained by a state, political subdivision of a state, or any agency or instrumentality of a state or political subdivision of a state and which agrees to separately account for amounts transferred into such plan from this Plan. The definition of eligible retirement plan shall also apply in the case of a distribution to a surviving spouse, or to a spouse or former spouse who is the alternate payee under a qualified domestic relations order, as defined in section 414(p) of the Code.

c)    The Participant or his spouse or former spouse must specify, in such form and at such time as SOPCO may prescribe, the "eligible retirement plan" to which the distribution is to be paid and may specify only one "eligible retirement plan."

d)    The Participant or his spouse or former spouse must provide to SOPCO in a timely manner adequate information regarding the designated "eligible retirement plan."

e)    An alternate payee under a Qualified Domestic Relations Order who is not the spouse or former spouse or a beneficiary who is not the surviving spouse of the Participant may not elect a direct rollover.

## 10.09  Qualified Domestic Relations Orders

a)    Payments Pursuant to a Qualified Domestic Relations Order

Any portion of a Participant's account under the Plan payable pursuant to a Qualified Domestic Relations Order shall be paid in accordance with such order.  Distributions may be made to an alternate payee pursuant to a Qualified Domestic Relations Order without regard to whether the Participant would otherwise be entitled to a distribution under the Plan.

b)    Effect of Qualified Domestic Relations Order on Other Distribution Provisions

1)    In the event all or a portion of a Participant's account is given to an alternate payee under a Qualified Domestic Relations Order, the $500 amount referred to in Section 10.07 apply separately to the amount due the alternate payee and the amount due the Participant.

2)    No distribution may be made under Article 10 (except to the extent required by Code section 401(a)(9) and the regulations thereunder), and no direct rollover may be made under Section 10.07 during the period during which SOPCO is considering whether an order is a Qualified Domestic Relations Order.  Also, if SOPCO is aware that a party is seeking a Qualified Domestic Relations Order concerning a Participant's account, SOPCO may restrict distributions and direct rollovers until SOPCO has determined that such withdrawal or distribution would be consistent with the Qualified Domestic Relations Order or until SOPCO determines that an order is not likely to be submitted.

## 11. TENDERS AND VOTING

### 11.01 Tenders for Employer Securities.

a)    Notwithstanding any other provision of this Plan to the contrary, but subject to the provisions of subsections (b), (c), and (d) of this Section, in the event an offer shall be received by the Trustee (including but not limited to a tender offer or exchange offer within the meaning of the Securities Exchange Act of 1934, as from time to time amended and in effect) to acquire any shares of Employer Securities held by the Trustee in the Trust, whether or not allocated to the account of any Participant (hereinafter referred to as an "Offer"), the Trustee shall have no discretion or authority to sell, exchange or transfer any of such shares pursuant to such Offer except to the extent, and only to the extent, the Trustee is timely directed to do so in writing with respect to any Employer Securities held by the Trustee subject to such Offer and allocated or deemed allocated to the account of any Participant, by each Participant to whose account any of such shares are allocated, as a named fiduciary, within the meaning of section 403(a)(1) of the Act (hereinafter referred to in this Article as "named fiduciaries").  Any Employer Securities held by the Trustee subject to such Offer and not allocated to the Account of any Participant shall be deemed allocated to the Account of each Participant in the proportion that the value of Employer Securities allocated to each Participant's Account under the Plan bears to

the value of the total amount of Employer Securities allocated to the accounts of all Participants under the Plan.

Upon timely receipt of such instructions, the Trustee shall, subject to subsections (c) and (e) of this Section, sell, exchange or transfer pursuant to such Offer, only such shares as to which such instructions were given. The Trustee shall use its best efforts to communicate or cause to be communicated to each Participant the consequences of any failure to provide timely instructions to the Trustee.

In the event, under the terms of an Offer or otherwise, any shares of Employer Securities tendered for sale, exchange or transfer pursuant to such Offer may be withdrawn from such Offer, the Trustee shall follow such instructions respecting the withdrawal of such securities from such Offer in the same manner and the same proportion as shall be timely received by the Trustee from the Participants as "named fiduciaries" entitled under this paragraph to give instructions as to the sale, exchange or transfer of securities pursuant to such Offer.

b)    In the event that an Offer for fewer than all of the shares of Employer Securities held by the Trustee in the Trust shall be received by the Trustee, each Participant who has been allocated or deemed allocated any of such Employer Securities subject to such Offer shall be entitled to direct the Trustee as to the acceptance or rejection of such Offer (as provided by subsection (a) of this Section) with respect to the largest portion of such Employer Securities as may be possible given the total number or amount of shares of Employer Securities the Plan may sell, exchange or transfer pursuant to the Offer based upon the instructions received by the Trustee from all other Participants who shall timely instruct the Trustee pursuant to this paragraph to sell, exchange or transfer such shares pursuant to such Offer, each on a pro-rata basis in accordance with the number or amount of such shares allocated or deemed allocated to their accounts.

c)    In the event an Offer shall be received by the Trustee and instructions shall be solicited from Participants in the Plan pursuant to subsection (a) of this Section regarding such Offer, and prior to termination of such Offer, another Offer is received by the Trustee for the Employer Securities subject to the first Offer, the Trustee shall use its best efforts under the circumstances to solicit instructions from the Participants to the Trustee

1)       with respect to Employer Securities tendered for sale, exchange or transfer pursuant to the first Offer, whether to withdraw such tender, if possible, and, if withdrawn, whether to tender any Employer Securities so withdrawn for sale, exchange or transfer pursuant to the second Offer, and

2)       with respect to Employer Securities not tendered for sale, exchange or transfer pursuant to the first Offer, whether to tender or not to tender such Employer Securities for sale, exchange or transfer pursuant to the second Offer.  The Trustee shall follow all such instructions received in a timely manner from Participants in the same manner and in the same proportion as provided in subsection (a) of this Section.  With respect to any further Offer for any Employer Securities received by the Trustee and subject to any earlier Offer (including successive Offers from one or more existing offerors), the Trustee shall act in the same manner as described above.

d)       In the event an Offer for any Employer Securities held by the Trustee in the Trust shall be received by the Trustee and the Participants shall be entitled to determine whether to accept, reject or withdraw an acceptance of such Offer pursuant to subsections (a) through (c) of this Section

1)       the Company and the Trustee shall not interfere in any manner with the decision of any Participant regarding the action of the Participant with respect to such Offer (hereinafter referred to in this Article as an "investment decision").

2)       the Trustee shall use its best efforts to communicate or cause to be communicated to all Participants the provisions of the Plan and Trust Agreement relating to the right of Participants to direct the Trustee with respect to Employer Securities subject to such Offer, including allocated and deemed allocated Employer Securities, and of the obligation of the Trustee to follow such directions;

3)       the Trustee shall use its best efforts to distribute or cause to be distributed to Participants all communications directed generally to the owners of the Employer Securities to whom such offer is made or is available; and

4)      the Trustee shall use its best efforts to distribute or cause to be distributed to Participants all communications that the Trustee may receive, if any, from the persons making the Offer or any other interested party (including the Company) relating to the Offer. The Company and SOPCO shall provide the Trustee with such information and assistance as the Trustee may reasonably request in connection with any communications to Participants by the offeror, the Company or other interested parties or public communications directed generally to the owners of the Employer Securities which are the subject of an Offer which would not be deemed to be interference in the making of an "investment decision" by any Participant.

e)      Notwithstanding anything elsewhere in this Plan or Trust Agreement to the contrary, any proceeds received by the Trustee as a result of the sale, exchange or transfer of Employer Securities pursuant to an Offer shall be reinvested in Employer Securities by the Trustee, if Employer Securities are available for purchase and if not, to the extent attributable to unallocated stock in the Loan Suspense Account, shall be used to pay down the Loan. The balance of the proceeds, if any, and the proceeds attributable to allocated Employer Securities shall be invested in short-term, fixed-income investments selected by the Trustee and having a maturity of not more than two years from the time such investment is made until the Trustee is otherwise directed by SOPCO.

## 11.02 Voting Company Securities.

Notwithstanding any other provision of this Plan to the contrary, the Trustee shall have no discretion or authority to vote Employer Securities held in the Trust by the Trustee on any matter presented for a vote by the stockholders of Eastman Kodak Company except in accordance with timely directions received by the Trustee from Participants who have Employer Securities allocated and deemed allocated to their accounts under the Plan. Such directions shall be given by Participants acting in their capacity as "named fiduciaries" with respect to both allocated and deemed allocated Employer Securities and, upon timely receipt of such instructions, the Trustee shall vote the Employer Securities held in the Trust pursuant to the directions of Participants giving instructions to the Trustee as set forth below. Employer Securities held by the Trustee and not allocated to the Account of any Participant shall be deemed allocated to the Account of each Participant in the proportion that the value of Employer Securities allocated to each Participant's Account under the Plan bears to the value of the total amount of Employer Securities allocated to the accounts of all Participants under the Plan.

a)   Each Participant who has Employer Securities allocated or deemed allocated to his Account shall provide directions to the Trustee on any matter to be presented for a vote by the stockholders of Eastman Kodak Company with respect to Employer Securities allocated or deemed allocated to his Account under the Plan and the Trustee shall follow such directions. With respect to Employer Securities allocated and deemed allocated to Participant Accounts for which no instructions were timely received by the Trustee, such Employer securities will not be voted by the Trustee.

b)   The Trustee shall use its best efforts to communicate or cause to be communicated to all Participants the provisions of this Plan and the Trust Agreement relating to the right of Participants to direct the Trustee with respect to the voting of Employer Securities allocated and deemed allocated to their accounts under the Plan. The Trustee shall use its best efforts to distribute or cause to be distributed to Participants all communications directed generally to the owners of Employer Securities entitled to vote and the Trustee shall use its best efforts to distribute or cause to be distributed to Participants all communications that the Trustee may receive, if any, from any person soliciting proxies or any other interested party (including the Company) relating to the matters being presented for a vote by the stockholders of Eastman Kodak Company. The Company and SOPCO shall provide the Trustee with such information and assistance as the Trustee may reasonably request in connection with any communications or distributions to Participants.

## 11.03  Options and Rights

Notwithstanding any other provision of this Plan to the contrary, SOPCO shall have the right and responsibility to exercise any options appurtenant to Employer Securities for the conversion thereof into other Employer Securities.

## 12.   TRUST AND TRUSTEE

## 12.01  Trust Agreement

Eastman Kodak Company and a Trustee shall enter into a Trust Agreement in such form and containing such provisions as Eastman Kodak Company deems appropriate, providing for the administration of the Trust Fund, and including provisions with respect

to the powers and authority of the Trustee, the authority of SOPCO to amend or terminate the Trust Agreement and to change the Trustee, and the settlement of the accounts of the Trustee on behalf of all persons having an interest in the Trust Fund. No person who receives full-time pay from any Affiliated Company shall receive compensation paid by the Trust Fund except for reimbursement of expenses properly incurred.

## 12.02  Trust Contribution

All contributions under the Plan will be paid into the Trust. From time to time the Trustee will accept, hold, invest and dispose of Trust Funds, acting in accordance with the Trust Agreement. All benefits payable under the Plan will be paid from the Trust Fund.

## 12.03  Trust Fund Investments

The Trustee will invest all cash contributions and all cash income, other than cash dividends on Employer Securities which are to be distributed pursuant to Section 9.02 or used to repay a Loan pursuant to Section 7.02, in Employer Securities as provided herein and retain such Employer Securities in the Trust Fund for distribution as provided herein. All cash dividends which are received by the Trustee on Employer Securities held for the Plan and which are to be distributed to Participants or Beneficiaries or used to make Loan payments shall be retained in the form of liquid investments pending distribution pursuant to Section 9.02 or payment pursuant to Section 7.02. To meet the Trust's administrative requirements, as determined by the Trustee, the Trustee may retain some part of the Trust Fund in liquid investments (including interest-bearing accounts and certificates of deposit within its own banking department) or may sell Employer Securities. The Trustee may purchase or sell Kodak Stock from or to any party, including itself or Eastman Kodak Company. Any other Employer Securities must be purchased from, or sold to, Eastman Kodak Company.

## 12.04  Annual Summary

Within ninety (90) days following the close of each calendar year, and within sixty (60) days after the removal or resignation of the Trustee, the Trustee shall file with SOPCO a written account setting forth all receipts and disbursements of the Trust Fund and all investments and other transactions effected by it during the previous year or during the period accounted for, including the value of the Trust as of the last business day of the Plan Year.

## 13.    AMENDMENT AND TERMINATION

### 13.01 Power to Amend

Subject to the provisions hereinafter set forth, the Director, Human Resources, Eastman Kodak Company has the right, at any time and from time to time, to modify or amend by written action in whole or in part any or all the provisions of the Plan; provided that

    (a)    the Director, Human Resources, Eastman Kodak Company shall not make any such modification or amendment which:

        (1)    shall cause a forfeiture or deprive any Participant of any amounts credited to him under the Plan, or

        (2)    shall make it possible for any part of the corpus or income of the Trust to be used for, or diverted to, purposes other than for the exclusive benefit of the Participants or their beneficiaries prior to the satisfaction of all liabilities with respect to such Participants or their beneficiaries under the Trust established pursuant to the Plan; and

    (b)    the Director, Human Resources, Eastman Kodak Company shall make no such modification or amendment which is likely to result in annual increased cost or liability to the Company or the Plan of $50 million or more.

Any amendment by Director, Human Resources, Eastman Kodak Company shall be on behalf of and shall be binding on all the corporations participating in the Plan.

### 13.02 Voluntary Termination of or Permanent Discontinuance of Contributions to the Plan

The Company expects the Plan to be permanent, but since future conditions affecting the Company cannot be anticipated, the Company shall have the right to terminate the Plan in whole or in part, or to permanently discontinue contributions to the Plan, at any time by resolution of the Board or Director, Human Resources, Eastman Kodak Company, and by giving written notice of such termination or permanent discontinuance to the Trustee.  Such resolution shall specify the effective date of termination or permanent discontinuance, which shall not be earlier than the first day of the Plan Year which includes the date of the resolution.

### 13.03  Limitation on Termination

Notwithstanding the provisions of Sections 13.01 and 13.02, the Company shall not terminate the Plan while any Debt or Loan shall remain outstanding and unpaid in whole or in part, without the prior written consent to any such termination by all holders and guarantors, if any, of the Plan's obligations under such Debt or Loan.  Where any holder or guarantor has a representative on SOPCO, such prior written consent will not be required if such representative approves such termination.

### 13.04  Allocations and Payments on Termination of or Permanent Discontinuance of Contributions to the Plan

If the Plan is terminated as herein provided, or if it should be partially terminated, or upon the complete discontinuance of Company contributions to the Plan, the following procedure shall be followed, except that in the event of a partial termination, it shall be followed only in cases of those Participants and Beneficiaries directly affected:

a)  Any Employer Securities pledged as collateral for a Loan shall be applied to discharge the Loan.

b)  Any amount (other than an amount in a Limitation Account) remaining in the Trust after all Debts and Loans have been wholly paid and satisfied shall be allocated as of the date of the termination of the Plan to eligible Employees pursuant to Section 8.03 in the same manner as if such amount were a Company Contribution and the date of termination of the Plan were the last scheduled workday of the Company's fiscal year, except that any such amount shall not be considered an Annual Addition.

c)  SOPCO may continue to function, but if it fails to do so, its records, books of account and other necessary data shall be turned over to the Company and the Company shall act on its own motion as hereinafter provided.

d)  The value of the Trust and the shares of all Participants and Beneficiaries shall be determined as of the date of termination or discontinuance.

e)  Distribution to Participants and Beneficiaries shall be made at such time after termination of or discontinuance of contributions to the Plan and by such of the methods provided in Sections 10.03 and 10.04, as SOPCO (or the Company if SOPCO is not then acting) in its discretion shall determine (except that distribution shall be made not later than the time specified in Section 10.01).

## 14.    AFFILIATED COMPANIES AND SUBSIDIARIES

### 14.01  Affiliated Companies and Subsidiaries

The name of each Affiliated Company and subsidiary which was included in this Plan as of December 31, 1988 is set forth in Appendix I.  The name of each Affiliated Company and subsidiary which will be included in this Plan as of January 1, 1989 is set forth in Appendix II.  The Director, Human Resources, Eastman Kodak Company may at any time provide for inclusion in the Plan of any other Affiliated Company or subsidiary of the Company and may provide for the exclusion from the Plan of any Affiliated Company or subsidiary of the Company.  Any Affiliated Company or subsidiary of the Company which is included in the Plan after January 1, 1989 shall be listed in Appendix II.

## 15.    GENERAL PROVISIONS

### 15.01  Duty to Furnish Information and Documents

Participants and their Beneficiaries must furnish to SOPCO or the Trustee such evidence, data or information as SOPCO considers necessary or desirable for the purpose of administering the Plan, and the provisions of the Plan for each person are dependent upon the condition that he will furnish promptly full, true and complete evidence, data, and information requested by SOPCO.  All parties to, or claiming any interest under, the Plan must perform any and all acts, and to execute any and all documents and papers, necessary or desirable for carrying out the Plan and the Trust.

### 15.02  SOPCO's Periodic Statements and Available Information

The Company shall advise Employees of the eligibility requirements and benefits under the Plan.  At such times as SOPCO may determine, but no less frequently than is required by law, SOPCO shall provide each Participant, and each former Participant and Beneficiary with respect to whom an account is maintained, with a statement reflecting the current status of his Account, including the Adjusted Balance thereof.  No Participant, except a member of SOPCO, shall have the right to inspect the records reflecting the Account of any other Participant.  SOPCO shall make available for inspection at reasonable times by Participants and Beneficiaries copies of the Plan, any amendments thereto, Plan summary, and all reports of Plan and Trust operations required by law.

### 15.03  No Enlargement of Employment Rights

Nothing contained in the Plan shall be construed as a contract of employment between the Company and any person, nor shall the Plan be deemed to give any person the right to be retained in the employ of the Company or limit the right of the Company to employ or discharge any person with or without cause, or to discipline any Employee.

### 15.04  Governing Law

All questions pertaining to the validity, construction and administration of the Plan shall be determined in conformity with the laws of the State of New York to the extent that such laws are not preempted by ERISA and valid regulations published thereunder.

### 15.05  No Guarantee

The Trustee, SOPCO, and the Company do not in any way guarantee the Trust Fund from loss or depreciation nor guarantee the payment of any money or other assets which may be or become due to any person from the Trust Fund.  No Participant or other person shall have any recourse against the Trustee, the Company or SOPCO if the Trust Fund is insufficient to provide Plan benefits in full.  Nothing herein contained shall be deemed to give any Participant, former Participant, or Beneficiary an interest in any specific part of the Trust Fund or any other interest except the right to receive benefits out of the Trust Fund in accordance with the provisions of the Plan and Trust.

### 15.06  Unclaimed Benefits

If any benefit payable to or on behalf of a Participant is not claimed before the later of one year from the date of entitlement or 90 days from the date of notice sent by SOPCO to the last known address of the Participant or Beneficiary entitled to such payment, such benefit shall be used to reduce Company contributions made under Article V, if any.  Any amount remaining after Company contributions have been paid will be used to reduce administrative expenses of the Plan and Trust.  Any amount remaining after administrative expenses have been paid will be reallocated among the other Participants.  If a claim is made at any future date by the Participant or Beneficiary entitled thereto, the amount payable to such Participant or Beneficiary will be distributable from the next Company contribution in accordance with the terms of the Plan or, if none, from the income of the Trust.

### 15.07  Merger or Consolidation of Plan

Any merger or consolidation of the Plan with another plan, or transfer of Plan assets or liabilities to any other plan, shall be effected in accordance with such regulations, if any, as may be issued pursuant to section 208 of ERISA, in such a manner that each Participant in the Plan would receive, if the merged, consolidated or transferee plan were terminated immediately following such event, a benefit which is equal to or greater than the benefit he would have been entitled to receive if the Plan had terminated immediately before such event.  Notwithstanding the foregoing, no merger or consolidation of this Plan with another plan shall be accepted if the proposed transferor plan is a defined benefit plan, a defined contribution plan subject to Code section 412 or a defined contribution plan subject to Code sections 401(a)(11) and 417, without first amending this Plan to comply with the provisions of Code sections 401(a)(11) and 417.

### 15.08  Accounts are Nonalienable

(a)   **In General.**  No benefit under this Plan shall be subject in any manner to voluntary or involuntary alienation, anticipation, sale, transfer, assignment, pledge or encumbrance, nor to seizure, attachment or other legal process for the debts of a Participant or a beneficiary, except that;

(1)   the Trustee shall have a first lien on the interests in the Plan of Participants executing notes pursuant to the Plan;

(2)   the Trustee shall  honor Qualified Domestic Relations Orders; and

(3)   the Trustee shall honor a Federal tax levy pursuant to Code section 6331 or a collection by the United States on a judgment resulting from an unpaid Federal tax assessment if and to the extent that SOPCO has determined that compliance with such levy or judgment is required under any applicable Federal law.

(b)   **Special rule for certain judgments and settlements.**  Section 15.08(a) shall not apply to any offset of a Participant's benefits provided under the Plan against, and such benefits shall be reduced by, an amount that the Participant is ordered or required to pay to the Plan, if:

(1)   the order or requirement to pay arises

(i)   under a judgment of conviction for a crime involving the Plan,

Case 6:12-cv-06146-DGL   Document 6-4   Filed 03/26/12   Page 56 of 62

BENEFIT PLAN 1C.02
Kodak Employee Stock Ownership Plan
Effective Date: January 1, 2007
As Amended: November 24, 2010
Page 55

(ii)     under a civil judgment (including a consent order or decree) entered by a court in an action brought in connection with a violation (or alleged violation) of part 4 of subtitle B of title I of ERISA, or

(iii)    pursuant to a settlement agreement between the Secretary of Labor and the Participant in connection with a violation (or alleged violation) of part 4 of subtitle B of title I of ERISA by a fiduciary or any other person, and

(2)     the judgment, order decree, or settlement agreement expressly provides for the offset of all or part of the amount ordered or required to be paid to the Plan against the Participant's benefits provided under the Plan.

## 15.09  Prudent Man Rule

Notwithstanding any other provision of this Plan, and the Trust Agreement, the Trustee, SOPCO and the Company shall exercise their powers and discharge their duties under this Plan and the Trust Agreement for the exclusive purpose of providing benefits to Employees and their Beneficiaries, and shall act with the care, skill, prudence and diligence under the circumstances that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

## 15.10  Limitations on Liability

Notwithstanding any of the preceding provisions of the Plan but without limitation of the protections extended to the Plan, the Company and its Affiliates, SOPCO and its members, and their employees and agents under Article III, none of the trustee, the Company, SOPCO and each individual acting as an employee or agent of any of them shall be liable to any Participant, former Participant or Beneficiary for any claim, loss, liability or expense incurred in connection with the Plan, except when the same shall have been judicially determined to be due to the gross negligence or willful misconduct of such person.

## 15.11  Federal and State Security Law Compliance

a)      SOPCO will take all necessary steps to comply with any applicable registration or other requirements of federal or state securities laws from which no exemption is available.

    b)      Stock certificates distributed to Participants may bear such legends concerning restrictions imposed by federal or state securities laws, and concerning other restrictions and rights under the Plan, as the Board, the Senior Vice President and Director, Human Resources, Eastman Kodak Company or SOPCO may, jointly or severally, determine to be necessary or appropriate.

## 15.12  Headings

The headings in this Plan are inserted for convenience of reference only and are not to be considered in construction of the provisions hereof.

## 15.13  Gender and Number

Throughout this Plan, the masculine gender shall include the feminine, and the singular shall include the plural.

## 15.14  ERISA and Approval Under Internal Revenue Code

This Plan is intended to constitute an employee stock ownership plan and meet the requirements of sections 401(a), 409, 501(a) and 4975(d)(3) and (e)(7) of the Code, and sections 407(d)(6) and 408(b)(3) of ERISA, to the extent applicable, as now in effect or hereafter amended, so that the income of the Trust Fund may be exempt from taxation under section 501(a) of the Code, contributions of the Company under the Plan may be deductible for federal income tax purposes under section 404 of the Code, and loans to the Trustee will be exempt under section 4975(d)(2) of the Code and section 408(b)(3) of ERISA from the prohibited transaction provisions of section 4975(c) of the Code and section 406 of ERISA, all as now in effect or hereafter amended.  Any modification or amendment of the Plan may be made retroactively, as necessary or appropriate, to establish and maintain such qualification and to meet any requirement of the Code or ERISA.

## 15.15  Military Service

Notwithstanding any provision of this Plan to the contrary, contributions, benefits and service credit with respect to qualified military service will be provided in accordance with section 414(u) of the Internal Revenue Code and the Heroes Earnings Assistance and Relief Tax Act of 2008.  Effective for deaths occurring after December 31, 2006 and subject to the requirements of Code section 401(a)(37), in the case of a Participant who dies while performing qualified military service, the survivors of the Participant are

entitled to any additional benefits (other than benefit accruals relating to the period of qualified military service)  provided under the Plan had the Participant resumed employment in accordance with the Participant's reemployment rights under chapter 43 of title 38, United States Code on the day preceding death and terminated employment on the actual date of death.  However, since this Plan provides for benefits which are fully vested at all times and does not differentiate between active and terminated Employees when determining the amount payable to a surviving spouse or other beneficiary, this provision is not expected to have a practical impact.

## 16.    TOP-HEAVY PROVISIONS

### 16.01 General Rule

a)    Notwithstanding any other provisions of the Plan, the following rules shall apply for any Plan Year if as of the determination date for such Plan Year, based on valuations as of such date, the sum of the present value of accrued benefits and accounts of Key Employees exceeds 60% of a similar sum for all Employees under each plan of the Company and any Affiliated Company in which a Key Employee participates and each other plan of the Company or any Affiliated Company which enables any such plan to meet the requirements of section 401(a)(4) or 410 of the Code.

1)    All present and all future accrued benefits of every Participant shall be fully vested and nonforfeitable.

2)    Company contributions shall be required for each Participant equal to 7 1/2% of Compensation.

b)    This Section 16.01(b) shall apply for purposes of determining the present values of accrued benefits and the  amounts of account balances of Employees as of the determination date.

1)    The present values of accrued benefits and the amounts of account balances of an Employee as of the determination date shall be increased by the distributions made with respect to the Employee under the Plan and any plan aggregated with the Plan under section 416(g)(2) of the Code during the 1-year period ending on the determination date. The preceding sentence shall also apply to distributions under a terminated plan which, had it not been terminated, would have been aggregated with the Plan under

section 416(g)(2)(A)(i) of the Code. In the case of a distribution made for a reason other than separation from service, death, or disability, this provision shall be applied by substituting "5-year period" for "1-year period."

2) The accrued benefits and accounts of any individual who has not performed services for an Affiliated Company during the 1-year period ending on the determination date shall not be taken into account.

c) "Key Employee" means any Employee or former Employee (including any deceased Employee) who at any time during the Plan Year that includes the determination date was an officer of the Employer having annual compensation greater than $130,000 (as adjusted under section 416(i)(1) of the Code for Plan Years beginning after December 31, 2002), a 5-percent owner of the Employer, or a 1-percent owner of the Employer having annual compensation of more than $150,000. For this purpose, annual compensation means compensation within the meaning of section 415(c)(3) of the Code. The determination of who is a Key Employee will be made in accordance with section 416(i)(1) of the Code and the applicable regulations and other guidance of general applicability issued thereunder.

d) The provisions of this Section 16.01 shall be interpreted in accordance with the provisions of section 416 of the Code and any regulations thereunder, which are hereby expressly incorporated by reference.

**BENEFIT PLAN 1C.02**
**Kodak Employee Stock Ownership Plan**
**Effective Date:  January 1, 2007**
**As Amended:  November 24, 2010**
**Appendix I**

Affiliated Companies and Subsidiaries included in the Plan as of December 31, 1988:

Cyclotomics, Inc.
Datatape Incorporated
Eastman Chemical International, Ltd.
Eastman Chemical Products, Inc.
Eastman Gelatine Corporation
Eastman Kodak International Capital Company, Inc.
Eastman Technology, Inc.
Ektron Applied Imaging, Inc.
Electronic Pre-Press Systems, Inc.
Holston Defense Corporation
Verbatim Corporation

**BENEFIT PLAN 1C.02**
**Kodak Employee Stock Ownership Plan**
**Effective Date:  January 1, 2007**
**As Amended:  November 24, 2010**
**Appendix II**

Affiliated Companies and Subsidiaries included in the Plan as of January 1, 1996:

      Eastman Gelatine Corporation.
      Eastman Kodak International Capital Company, Inc.